IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DR. ROBERT BRUGLER

    Plaintiff,

v.

UNUM GROUP and PROVIDENT
LIFE AND ACCIDENT INSURANCE
COMPANY

    Defendants.

No. 4:15-CV-01031

(Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 2, 2018

Defendants Unum Group and Provident Life and Accident Insurance Company (collectively, "Defendants") moved for partial summary judgment on Plaintiff Dr. Robert Brugler's five-count complaint. For the reasons that follow, Defendants' motion will be granted.

## I.    BACKGROUND[1]

Dr. Brugler, a dentist, purchased from Defendants a long term disability policy that provided him with monthly benefits if he were to become disabled and unable to practice his profession. After being diagnosed with a retinal detachment

---

[1] The following facts are derived from Defendants' Statement of Material Facts (ECF No. 31-5), and Plaintiff's Response to Defendants' Statement of Material Facts (ECF No. 33), unless otherwise noted.

in his right eye, Dr. Brugler filed a claim for disability benefits under his policy. Defendants paid Dr. Brugler benefits for a number of months and then sought to determine whether his vision had improved. Defendants conferred with Dr. Brugler's treating physician, and Dr. Brugler was ultimately referred to another physician to conduct an independent medical examination.

The independent medical examination concluded that Dr. Brugler's claim for disability was not medically supported. As a result, Defendants stopped paying Dr. Brugler disability benefits. Sometime later, Dr. Brugler began receiving care from a new physician. Defendants requested copies of Dr. Brugler's new medical records for further review. Defendants forwarded those records to the physician who had conducted the initial independent medical examination, who again concluded that Dr. Brugler continued to lack an indemnifiable disability.

Dr. Brugler alleges he is entitled to disability benefits under the policy and filed a five-count complaint against Defendants. Count I alleges a breach of contract claim and seeks various monetary damages. Count II is a declaratory judgment claim seeking to order Defendants to pay Dr. Brugler payments withheld under the policy and requiring the Defendants to continue to make such payments until Dr. Brugler's treating physicians or other qualified specialists determine he is not entitled to them. Count III alleges an unfair trade practices claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §

201-203 *et seq*. Count IV alleges a statutory bad faith claim under 42 Pa.C.S.A. § 8371. Count V alleges a common law bad faith claim.

Currently pending before the Court is Defendants' motion for partial summary judgment on Dr. Brugler's declaratory judgment claim, unfair trade practices claim, and statutory bad faith claim.[2]

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[4] To defeat a motion for summary judgment, then, the nonmoving party must point to evidence in the record that would allow a jury to rule in that party's favor.[5] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the non-moving party.[6]

---

[2] Dr. Brugler stipulated to the dismissal of his common law bad faith claim (Count V), and demand for attorney fees and punitive damages sought in connection with his breach of contract claim (Count I).

[3] F.R.Civ.P. 56(a).

[4] *Lichtenstein v. Univ. of Pittsburgh Medical Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 252 (1986)).

[5] F.R.Civ.P. 56(c)(1); *Liberty Lobby*, 477 U.S. at 249.

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## B. Declaratory Judgment Claim

While Dr. Brugler's papers[7] seek relief under the Pennsylvania Declaratory Judgment Act (42 Pa.C.S.A. § 7533), the Erie Doctrine mandates the application of the Federal Declaratory Judgment Act in diversity cases.[8] Under the Federal Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[9] A federal court may entertain a declaratory judgment action "when it finds that the declaratory relief sought "(i) will serve a useful purpose in clarifying and settling the legal relations in issue; and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."[10]

The essence of Dr. Brugler's declaratory judgment action is whether Defendants must provide him with benefits so long as his physician continues to

---

[7] *See* Complaint (ECF No. 1) at ¶ 62; Brief in Opposition (ECF No. 34) at 16-17.

[8] *Kelly v. Maxum Specialty Insurance Group*, 868 F.3d 274, 281 n.4 (3d Cir. 2017). Dr. Brugler asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a) because diversity of citizenship exists between the parties and the damages sought exceed $75,000. *See* Complaint (ECF No. 1) at 3.

[9] 28 U.S.C. § 2201(a). *See also* F.R.Civ.P. 57. The United States Supreme Court has declared that "[d]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491 (1942). Indeed, district courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

[10] *E.g., James ex rel. James v. Richman*, 465 F.Supp.2d 395, 408 (M.D.Pa. 2006) (citation omitted).

certify that he is disabled as defined by the policy.[11] Narrowly tailoring this Court's discretionary declaratory judgment authority to address this specific issue will resolve what appears to be a core dispute between the parties and would clarify their legal relationships as they proceed in litigation.[12] Accordingly, I will

---

[11] *See* Plaintiff's Opposition to the Defendants' Motion for Partial Summary Judgment (ECF No. 34) at 16.

[12] Both parties have briefed this issue in their papers. Although Dr. Brugler does not cross-move for summary judgment, he does not identify what issues, if any, must be resolved by a jury in his declaratory judgment action.

Additionally, pursuant to this discretionary declaratory judgment authority, courts have, at the motion to dismiss stage, dismissed declaratory judgment claims when they duplicate breach of contract claims within the same action. *See, e.g., Morris v. American Nat. Ins. Corp.*, 4:13–CV–2236, 2015 WL 4092393, *8 n.7 (M.D.Pa. July 7, 2015) (describing declaratory judgment as "redundant in light of the breach of contract claim"); *accord*; *Smithkline Beecham Corp. v. Continental Ins. Co.*, No. Civ.A. 04–2252, 2004 WL 1773713, at *2 (E.D.Pa. Aug. 4, 2004) ("Hence, because [Defendant's] breach of contract claims require resolution of the same issues raised in [Defendant's] declaratory judgment claims and because [Defendant] can be afforded full relief on its breach of contract claims, and will, therefore, suffer no prejudice from the dismissal of its declaratory judgment claims, the Court will decline to entertain [Defendant's] claims for declaratory judgment."). *Cf. Landau v. Viridian Energy PA LLC*, 223 F.Supp.3d 401, 421022 (E.D.Pa. 2016) (refusing to dismiss duplicative declaratory judgment claim when it served as potential basis for class certification under Federal Rule of Civil Procedure 23(b)(2) and dismissal would prejudice plaintiff). In those cases, courts are concerned by redundant litigation when plaintiffs' declaratory judgment claims raise the same issues and seek the same relief as in their breach of contract claims. As Defendants suggest, concerns of duplicative litigation are present here. On the one hand, in his breach of contract claim Dr. Brugler seeks monetary damages and "such other relief as the Court deems just and proper." *See Complaint* (ECF No. 1) at 11. On the other hand, in his declaratory judgment claim Dr. Brugler seeks monetary damages and an order that "permanently requir[es] the Defendants to continue to make such payments until Plaintiff's treating physicians or other qualified specialists who regularly and routinely treat the Plaintiff conclude that he is not entitled thereto." *Id.* at 13. Determining what relief Dr. Brugler may be entitled to under either claim requires resolution of the same issue—interpreting the insurance policy. While this Court is mindful of Defendants' concerns that elements of Dr. Brugler's breach of contract and declaratory judgment claims may overlap, I will not avoid the declaratory judgment claim now simply by labeling it "duplicative." Providing parties with an intellectual ruling at this stage of the litigation may clarify the legal relationships at issue and eliminate some lurking uncertainty.

turn to Dr. Brugler's disability insurance policy, which in Pennsylvania, is a question of law.[13]

When interpreting an insurance policy, a court must "ascertain the parties' intentions as manifested by the policy's terms."[14] A court must read the policy as a whole.[15] If the language of the policy is clear, the Court gives effect to the language's plain meaning; but if the terms are ambiguous, the terms are construed in favor of the insured.[16]

> The policy states in pertinent part:
>
> Physician means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.
> …
> Total Disability or totally disabled means that due to Injuries or Sickness you are not able to perform the substantial and material duties of Your Occupation.
>
> To be considered totally disabled, you must be receiving care by a Physician which is appropriate for the condition causing the disability.

---

[13] *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 589 Pa. 317, 908 A.2d 888, 897 (Pa.2006) (internal citations omitted) (explaining that interpretation of an insurance policy is a question of law). The state where the insurance policy was "issued and delivered" is the state whose laws govern the policy's interpretation—here, Pennsylvania. *Pittsburgh Bridge and Iron Works v. Liberty Mut. Ins. Co.*, 444 F.2d 1286, 1288 n.2 (3d Cir. 1971) (citing *Varas v. Crown Life Ins. Co.*, 203 A.2d 505 (Pa. Super. 1964). The record appears to suggest that Pennsylvania is the state of "issuance and delivery." Both Dr. Brugler and Defendants cite to Pennsylvania law in their papers, and neither argue that the outcome of this case would differ by applying the law of any other state whose law could apply.

[14] *Id.*

[15] *Ramara, Inc. v. Westfield, Ins. Co.*, 814 F.3d 660, 676-77 (3d Cir. 2017).

[16] *Id.*

> We will waive this requirement when we deem continued care would be of no benefit to you.
> …
> PROOF OF LOSS
> When your claim is for monthly payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each month for which we are liable. For any other loss, written proof must be given within 90 days after such loss. [17]
> …
> PHYSICAL EXAMINATIONS
> We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending

Dr. Brugler hones in on this language—"[t]o be considered totally disabled, you must be receiving care by a Physician which is appropriate for the condition causing the disability"—and argues that he is entitled to disability benefits as long as his treating physician concludes that he is disabled.[18] Defendants argue that such a construction has no basis in the language of the policy or applicable law.[19]

Dr. Brugler's argument fails because the plain language of that statement contravenes his construction. First, the language of the policy is clear and we give effect to its plain meaning: to receive benefits under the policy an insured must have a (1) a qualifying disability, (2) be receiving care for that disability by a

---

[17] *See* Exhibit 1 (ECF No. 34-1) at 15, 31

[18] *See* Plaintiff's Opposition to the Defendants' Motion for Partial Summary Judgment (ECF No. 34) at 15-16 ("[T]he [p]olicy is clear. Provided the Plaintiff's treating physician supplied the necessary information required under the terms of the Policy, benefits would continue to flow to the Plaintiff."); *Id.* ("[N]owhere does the Policy provide or warn a consumer that disability benefits could be terminated if the Defendants simply obtained a physician's report that, for all intents and purposes, disagreed with the physician treating or managing the insured's care.").

[19] *See* Brief in Support (ECF No. 32) at 10-16; Reply Brief (ECF No. 41) at 14-15.

physician, and (3) must file a monthly claim proving the disability. Specifically, "[t]o be considered totally disabled, you must be receiving care by a Physician which is appropriate for the condition causing the disability" means that for an insured to be considered totally disabled, a physician must be providing treatment to the insured for the injury giving rise to the disability. The reasonable interpretation of this language is that an insured must be receiving care by a physician as a condition precedent to coverage.[20] The language does not crown Dr. Brugler's treating physician as the sole arbiter of his disability claim.

Second, the fact that the policy confers upon the insurer a right to independently investigate the insured's claim at the insurer's expense further undermines Dr. Brugler's proffered interpretation. The policy states that Defendants have the right to have Dr. Brugler examined "as often as reasonable." This clause comports with well-settled principles of insurance law permitting

---

[20] Indeed, other courts who have confronted this language have construed this provision as a condition precedent or otherwise examined it to determine whether the physician's level of care was appropriate. Dr. Brugler's papers do not cite to any authority supporting his interpretation. My independent search yielded none. *See, e.g.*, *Brosnan v. Provident Life and Acc. Ins. Co.*, 31 F.Supp.2d 460, 464 n.3 (E.D.Pa. 1998) (allowing jury to decide whether under that provision insured received adequate care); *Reznick v. Provident Life and Accident Ins. Co.*, 364 F.Supp.2d 635, 638 (E.D. Mich. 2005) ("The Court interprets the condition of "receiving care by a Physician which is appropriate" as imposing on the insured a duty to seek and accept appropriate care."); *accord Provident Life and Accident Ins. Co. v. Van Gemert,* 262 F.Supp.2d 1047 (C.D.Cal.2003) (interpreting "appropriate care" provision as whether such care "would be determined objectively as the treatment a patient would make a reasonable decision to accept after duly considering the opinions of medical professionals.").

insurers to rely on independent medical evaluations when investigating claims.[21] This language also gives notice to the insured that he or she may be examined by a physician hired by the insurer, undermining to Dr. Brugler's argument that the policy fails to warn him that a physician hired by the insurer may terminate his benefits.[22]

Third, while Dr. Brugler's papers are unclear as to whether he argues the term "Physician" is either ambiguous or means that only his treating physician can certify a disability, such an argument does not support his proffered interpretation. The term "physician," though broad, is not ambiguous. Physician is defined as "any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss." This means that a physician with authority to act under the policy could be treating Dr. Brugler, or be employed by the insurance company. This language may be broad; but its breadth does not generate ambiguity.[23]

---

[21] *See Neal v. State Farm Mut. Auto. Ins. Co.*, No. 1:13–cv–02309, 2015 WL 2250153, at *5 (M.D.Pa. May 12, 2015) (citing *Wedemeyer v. U.S. Life Ins. Co. In City of New York,* No. 05–6263, 2007 WL 710290, at *10 (E.D.Pa. Mar. 6, 2007); *Seidman v. Minnesota Mut. Life Ins. Co.,* 40 F.Supp.2d 590 (E.D.Pa.1997)).

[22] Dr. Brugler's papers fail to cite to any legal authority supporting such a construction.

[23] *See United States v. Yusuf,* No. 05–3019, 2006 WL 2578380, at *3 (3d Cir. Sept. 7, 2006) (holding that the contract at issue was not ambiguous because the terms were broad and unqualified as opposed to vague or obscure words subject to a double meaning) (quoting *Landtect Corp. v. State Mut. Life Assurance Co. of Am.,* 605 F.2d 75, 80 (3d Cir.1979); *Steuart v. McChesney,* 444 A.2d 659, 663 (Pa.1982) ("[T]he meaning of language cannot be distorted to establish the ambiguity.").

Accordingly, because Dr. Brugler's interpretation as to who may certify his disability is incorrect and there are no genuine issues of material fact precluding us from making this termination as a matter of law, this Court grants summary judgment in favor of Defendants on Dr. Brugler's declaratory judgment claim.

As the parties proceed in this litigation, the Court reiterates that it is using its discretionary declaratory judgment authority to resolve in Defendants' favor only the narrow issue brought to bear at summary judgment. Granting summary judgment on Dr. Brugler's declaratory judgment claim does not prevent Dr. Brugler from recovering damages he otherwise may be entitled to under his breach of contract claim.[24]

### C. Unfair Trade Practices Claim

Defendants also contend that Dr. Brugler's unfair trade practices claim is not actionable under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201–203, *et seq,* because it alleges nonfeasance rather than malfeasance.

---

[24] *See Nova Financial Holdings Inc. v. Bancinsure, Inc.*, Civil Action No. 11–07840, 2012 WL 1322932, at *4 (E.D.Pa. Apr. 17, 2012) (explaining that dismissal of declaratory judgment action did not prejudice plaintiff in pursuing breach of contract claim). Even if the parties had moved for summary judgment on the breach of contract claim, we would decline to grant it. Dr. Brugler's physicians opine that he continues to be disabled and disputes the reliability of the medical tests used by defendants to deny his claim. Defendants insist that he is not in fact disabled and defend their reliance on those tests. Thus, whether Dr. Brugler is in fact disabled presents a genuine dispute of material fact for a jury to resolve.

The purpose of the UTPCPL is "to protect the public from fraud and deceptive business practices" and provides relief for malfeasance, not nonfeasance.[25] Malfeasance means a contractual obligation was performed improperly.[26] Nonfeasance means a party failed to perform.[27] To determine whether a plaintiff alleges malfeasance or nonfeasance, courts have looked to the essence of the plaintiff's complaint.[28] It is well-established that an insurer's refusal to pay benefits to its insured is nonfeasance, and therefore, not actionable under the UTPCPL.[29]

Here, the essence of Dr. Brugler's complaint is that Defendants failed to pay him the disability benefits he believes he should receive under the policy.[30] It appears that Dr. Brugler's papers attempt to argue malfeasance by suggesting that the physicians employed by Defendants used unreliable methods to deny Dr.

---

[25] *Gardner v. State Farm Fire & Cas. Co.,* 544 F.3d 553, 564 (3d Cir. 2008); *see Horowitz v. Fed. Kemper Life Assur. Co.,* 57 F.3d 300, 307 (3d Cir. 1995) ("Only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable.").

[26] *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F.Supp.2d 623, 632 (M.D.Pa. 2009).

[27] *Id.*

[28] *See, e.g.*, *Klinger v. State Farm Mut. Auto. Ins. Co.,* 895 F.Supp. 709, 718 (M.D.Pa.1995); *accord Cantor v. The Equitable Life Assurance Society of the U.S.,* No. 97-5711, 1999 WL 219786, at *5 (E.D.Pa. Apr. 12, 1999).

[29] *See, e.g.*, *Klinger,* 895 F.Supp. at 718 (citing *Gordon v. Pennsylvania Blue Shield*, 548 A.2d 600, 602 (Pa. Super 1988); *Horowitz*, 57 F.3d at 307; *Riddell v. State Farm Fire & Casualty Co.*, No. 91-1461, 1992 WL 209971, *7 (M.D.Pa. July 9, 1992).

[30] *See* Complaint (ECF No. 1) at ¶¶ 79-82.

Brugler disability benefits.[31] But Dr. Brugler fails to identify any legal authority suggesting such behavior equals malfeasance as opposed to nonfeasance.[32] Even if Dr. Brugler's papers characterize Defendants' claims handling process as reckless,[33] that characterization does not morph nonfeasance into malfeasance.[34] Because Defendants' failure to pay disability benefits is nonfeasance and therefore not actionable under the UTPCPL, Defendants are entitled to summary judgment on Dr. Brugler's UTPCPL claim.

### D. Bad Faith Claim

Defendants additionally argue they did not act in bad faith because they had a reasonable basis to deny Dr. Brugler disability benefits under the policy.

To prevail on a claim for statutory bad faith under 42 Pa.C.S.A. § 8371, a plaintiff must "present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis."[35] To

---

[31] *See* Brief in Opposition (ECF No. 34) at 18-19.

[32] In fact, Dr. Brugler identifies no legal authority whatsoever in opposing Defendants' motion for summary judgment on the UTPCPL claim.

[33] *See* Complaint (ECF No. 1) at ¶ 82.

[34] *See, e.g.*, *Klinger*, 895 F.Supp. at 718 (rejecting plaintiff's characterization that insurer's reckless handling of his insurance claims amounted to misfeasance" because "regardless of the language used by [plaintiff] to describe [defendant's] conduct, the allegation is the same: he is challenging [defendant's] failure to pay insurance benefits in a timely fashion").

[35] *Rancosky v. Washington National Insurance Co.*, 170 A.3d 364, 377 (Pa. 2017); *accord Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 543 (3d Cir. 2012).

prove bad faith, the plaintiff's burden is substantial: "Bad faith must be proven by clear and convincing evidence and not merely insinuated. This heightened standard requires evidence so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith."[36]

Here, Dr. Brugler cannot meet this burden because Defendants had a reasonable basis to deny his claim.[37] First, when making a claim determination, an insurer may reasonably rely on the findings of an independent medical examination—"even in the face of contrary medical opinions."[38] Defendants relied upon an independent medical examination conducted by Dr. Schaffer to conclude that Dr. Brugler was no longer disabled under the policy.[39] While Dr. Brugler alleges Defendants improperly favored Dr. Schaffer's opinion over that of Dr.

---

[36] *Post*, 691 F.3d at 543; J*C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (explaining plaintiff's burden at summary judgment is "commensurately high in light of the substantive evidentiary burden [she faces] at trial").

[37] *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (explaining that an insurer defeats a plaintiff's bad faith claim by showing that it had a reasonable basis to deny the claim).

[38] *Neal v. State Farm Mut. Auto. Ins. Co.*, No. 1:13–cv–02309, 2015 WL 2250153, at *5 (M.D.Pa. May 12, 2015) (citing *Wedemeyer v. U.S. Life Ins. Co. In City of New York*, No. 05–6263, 2007 WL 710290, at *10 (E.D.Pa. Mar. 6, 2007); *Seidman v. Minnesota Mut. Life Ins. Co.*, 40 F.Supp.2d 590 (E.D.Pa.1997)).

[39] *See* Exhibit 11 (ECF No. 31-5) at 81-85; Exhibit 12 (ECF No. 31-5) at 87-91.

Brugler's own treating physicians and specialists, "an insurer is not required to give greater credence to opinions of treating medical providers."[40]

Second, this record does not yield an inference that Defendants acted frivolously or with an "unfounded refusal" to pay.[41] There is ample, undisputed record evidence showing that Defendants, after conducting a thorough investigation of Dr. Brugler's claim, had a reasonable basis to deny his disability claim.[42] The parties agree that, after Dr. Brugler filed his disability claim in 2012, Defendants obtained his medical and occupational information, and asked their in-house physician, Dr. Judith Cohen, to complete a medical review.[43] In accordance with Dr. Cohen's findings, Defendants concluded Dr. Brugler was totally disabled, but suggested revisiting his condition in four to six months to determine whether his vision had improved.[44] Defendants revisited Dr. Brugler's condition in 2013, spoke with Dr. Brugler's treating physician, and decided to schedule an

---

[40] *Wedemeyer*, 2007 WL 710290, at *10 ("[A]n insurer is not required to give greater credence to opinions of treating medical providers."); *Seidman,* 40 F.Supp.2d at 594.

[41] *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (quoting *Terletsky v. Prudential Property & Casualty Co.*, 649 A.2d 680, 688 (Pa. Super. 1994)); *see UPMC Health Sys. v. Metro. Life. Ins. Co.,* 391 F.3d 497, 506 (3d Cir.2004) (describing the "the essence of a bad faith claim" as "the unreasonable and intentional (or reckless) denial of benefits").

[42] *Wedemeyer*, 2007 WL 710290, at *15.

[43] Defendant's Statement of Facts (ECF 31-5) at ¶ 10-11; Plaintiff's Statement of Facts (ECF 33) at 10-11.

[44] Defendant's Statement of Facts (ECF 31-5) at ¶ 11-12; Plaintiff's Statement of Facts (ECF 33) at 11-12.

independent medical evaluation with Dr. Michael Schaffer.[45] After Dr. Schaffer concluded that Dr. Brugler's disability claim was not medically supported, Defendants terminated Dr. Brugler's disability benefits.[46] When Dr. Brugler received care from a new physician, Defendants requested copies of his new medical records for review.[47] After reviewing those new records, Dr. Schaffer affirmed his prior conclusion that Dr. Brugler's medical issues did not support his disability claim.[48]

Third, an insurer has a right to evaluate legitimate coverage issues[49] and does not act in bad faith by aggressively protecting its interests.[50] Although Dr. Brugler insinuates that Dr. Cohen "sought from the outset to find a 'test' that could result in the denial of his claim," [51] Dr. Brugler's papers fail to identify where the record supports such an inference, and this Court on its own review finds none,

---

[45] Defendant's Statement of Facts (ECF 31-5) at ¶ 13-16; Plaintiff's Statement of Facts (ECF 33) at 13-16.

[46] Defendant's Statement of Facts (ECF 31-5) at ¶ 17-18; Plaintiff's Statement of Facts (ECF 33) at 17-18.

[47] Defendant's Statement of Facts (ECF 31-5) at ¶ 19-20; Plaintiff's Statement of Facts (ECF 33) at 19-20.

[48] Defendant's Statement of Facts (ECF 31-5) at ¶ 22-23; Plaintiff's Statement of Facts (ECF 33) at 22-23.

[49] *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 368 (3d Cir. 2004) ("[A]n insurer is not bound to submerge its own interest in order that the insured's interests may be made paramount, and an insurer does not act in bad faith by investigating and litigating legitimate issues of coverage.").

[50] *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 543 (3d Cir. 2012).

[51] *See* Brief in Opposition (ECF No. 34) at 24.

especially since conduct *insinuating* bad faith is insufficient to *establish* bad faith as a matter of law.[52] While Dr. Brugler objects that Defendants procured his golf scores and conducted searches about his business to see if they could somehow discredit his claim, he points to no authority setting forth that Defendants' claims handling procedures were improper, or that their methods otherwise went beyond mere negligence and constituted conduct amounting to bad faith.[53]

Because no reasonable jury could find in Dr. Brugler's favor, Defendants' motion for summary judgement is granted on Dr. Brugler's bad faith claim.[54]

---

[52] *See Post,* 691 F.3d at 523 ("Even questionable conduct giving the appearance of bad faith is not sufficient to establish [bad faith] so long as the insurer had a reasonable basis to deny coverage.").

[53] *Lehman v. Victoria Fire & Cas. Ins. Co.,* No. 09–1542, 2011 WL 2457928, at *10 (W.D.Pa. June 16, 2011) ("[A]lthough these and the other so-called 'inadequacies' in the investigation could be considered negligent or indicative of poor judgment, they are insufficient to sustain a bad faith claim."); *Krisa v. The Equitable Life Assurance Soc'y,* 113 F.Supp.2d 694, 704 (M.D.Pa.2000) ("The insurance company also is not required to show the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion.").

[54] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. CONCLUSION

For the reasons discussed above, Defendants' partial motion for summary judgment will be granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge